In the Matter of DEE'S, INC., Bankrupt. Albert E. Hughes, Jr., Trustee in Bankruptcy of Estate of Lewis Dion, Bankrupt, Appellant.

No. 13650.

United States Court of Appeals Third Circuit.

Argued April 6, 1962.

Reargued Nov. 19, 1962.

Decided Dec. 19, 1962.

**620**

Joel H. Weinrott, Philadelphia, Pa. (Blank, Rudenko, Klaus & Rome, Philadelphia, Pa., on the brief), for appellant.

Meyer E. Maurer, Philadelphia, Pa. (Wexler, Mulder & Weisman, Philadelphia, Pa., Adelman & Lavine, Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, McLAUGHLIN, Circuit Judge, and SHERIDAN, District Judge.

BIGGS, Chief Judge.

Hughes, the petitioner, trustee in bankruptcy of the Estate of Lewis Dion, an individual, filed a reclamation petition against Stark, the trustee in bankruptcy of the Estate of Dee's, Inc., to reclaim certain assets. The Referee denied the petition, stating, however, that he did not restrict the petitioner's, Hughes', position by the technicalities of his reclamation demands. The Referee's decision was reviewed by the court below and was affirmed.[1] This appeal followed.

The facts are as follows. For some years prior to January 1, 1957, Dion as an individual owned and operated an appliance business on North Broad Street in Philadelphia. On January 1, 1957 he caused certain entries to be made in his books to show a transfer of all of his individual business assets except the Broad Street real estate referred to above to Dee's. Dee's was a previously existing and operating Pennsylvania corporation wholly owned by Dion. Dee's also was engaged in the appliance business at two other locations in the Philadelphia area. Dion executed no formal documents evidencing this purported transfer of assets. Dion's trustee, Hughes, asserts that Dion was already insolvent or was rendered insolvent by the transfer, and also that Dee's was insolvent both before and after the transfer. Hughes contends as well that no consideration was given for the assets transferred other than an alleged assumption by Dee's of Dion's individual obligations.

After the purported transfer Dion continued in the appliance business. On March 10, 1958, Dee's filed a petition for an arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. On the same day, after Dee's petition had been filed, Emerson Radio (now known as Du-

1. The memorandum opinion of the court below was not reported for publication. E.D.Pa., 1961, 193 F.Supp. 550.

mont Television and Radio Corp.) and Philadelphia Distributors Inc. filed suits in equity in the Court of Common Pleas of Philadelphia County against Dee's seeking to rescind the transfer and to assert an equitable lien against Dee's assets. Both Dumont and Philadelphia Distributors were substantial creditors of Dion at the time of the transfer, *viz.*, on January 1, 1957. These state court actions were discontinued very soon because instituted after the exclusive jurisdiction of the bankruptcy court had attached to Dee's assets.

Later, on April 10, 1958, an involuntary petition in bankruptcy was filed against Dion. Thereafter, on June 18, 1958, Dee's being unable to complete an arrangement, was adjudicated a bankrupt. Dion, the individual, was adjudicated a bankrupt on that same day.

The petition for reclamation is based essentially upon the same causes of action asserted by Dion's creditors in the actions in the Pennsylvania Court of Common Pleas. These actions were bottomed respectively on the grounds that the purported transfer of assets on January 1, 1957 violated the provisions of the bulk sales section of the Uniform Commercial Code (Article 6, 12A P.S. § 6–101 et seq.), the Uniform Fraudulent Conveyance Act (39 P.S. § 351 et seq.) and the Statute 13 Eliz. c. 5 (39 P.S. Appendix), each in force in Pennsylvania. Hughes' claim, as Dion's trustee, differs only in the respect that he seeks to employ Sections 70, sub. c and 70, sub. e of the Bankruptcy Act in asserting his claim. See 11 U.S.C.A. § 110, subs. c,[2] e.[3]

Stark, Dee's trustee, contends that Section 70, sub. c of the Bankruptcy Act gives him the rights and status of a creditor holding a lien as of the date of bankruptcy,[4] whether or not such a creditor actually existed. Therefore, continues Stark, the bankruptcy of the transferee (Dee's) cut off the right of the transferor's (Dion's) creditors or that of his trustee to attack the transfer. This is said to be so because Dee's bankruptcy intervened before any of Dion's creditors levied on the transferred assets or before Dion's petition in bankruptcy was filed.

If Dee's trustee's argument be valid we need not consider any other ground advanced by the Referee in Bankruptcy in dismissing the reclamation petition or denying Dion's trustee relief. If no action will lie against an estate because of the superior position of the trustee under Section 70, sub. c, the dismissal of the reclamation petition, or any other demand of a similar nature by Dion's trustee, is required.

To resolve this issue we must determine (1) the meaning and effect of Sections 70, sub. c and 70, sub. e of the Bankruptcy Act, and (2) the position afforded trustees by the two sections.

Both Sections 70, sub. c and 70, sub. e of the Bankruptcy Act, among other things, give certain statuses and powers of avoidance to trustees in bankruptcy. Section 70, sub. e clothes the trustee with the power to avoid any transfer which any creditor having provable claims under applicable state

---

2. The pertinent provisions of Section 70, sub. c read: "The trustee, as to all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt could have obtained a lien by legal or equitable proceedings at the date of bankruptcy, shall be deemed vested as of such date with all the rights, remedies, and powers of a creditor then holding a lien thereon by such proceedings, whether or not such a creditor actually exists."

3. In part Section 70, sub. e states: "A transfer made or suffered or obligation

incurred by a debtor adjudged a bankrupt under this title which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this Act, shall be null and void as against the trustee of such debtor."

4. The "date of bankruptcy" by definition is the date of the filing of the petition. See note 5 cited to the text in Lewis v. Manufacturers Nat. Bank, 364 U.S. 603, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961).

or federal law, could render void. Lewis v. Manufacturers National Bank, 364 U.S. 603, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961); H.R.Rep.No.1409, 75th Cong. 1st Sess., p. 32. On the other hand Section 70, sub. c gives the trustee the status of a creditor, actual or hypothetical, holding a valid lien on the date when the bankruptcy petition was filed. Lewis v. Manufacturers National Bank, supra at p. 607, 81 S.Ct. 347, 5 L.Ed.2d 323; Marsh, Constance v. Harvey—The "Strong-Arm Clause" Re-Evaluated, 43 Cal.L.Rev. 65 (1955); Note, 34 Temple L.Q. 279 (1961). The status granted a trustee by Section 70, sub. c is that of a lien creditor without notice. In re Kravitz, 278 F.2d 820 (3 Cir., 1960); In re Waynesboro Motor Co., 60 F.2d 668, 669 (S.D.Miss.1932). Thus we see that a distinction between the powers of avoidance granted a trustee under Section 70, sub. c and Section 70, sub. e is that the trustee under Section 70, sub. e has only the powers of actual creditors of the bankrupt while under Section 70, sub. c he has the powers of both actual and hypothetical creditors.

In determining priorities when one trustee is claiming property under Section 70, sub. e and another is defending his right to it under Section 70, sub. c, we must look to the law upon which the Section 70, sub. e right is based. First it must be decided whether under that law actual provable claims against the bankrupt exist. Next a conclusion must be reached as to whether that law, *i. e.,* the law on which the Section 70, sub. e right is based, affords a method or way of cutting off these claims. If no method exists for wiping out the power of avoidance vested in the trustee of the bankrupt who made the transfer, then that trustee must prevail. Finally, if a method exists for obliterating the power of avoidance of the transferor trustee then it must be determined whether the status asserted under Section 70, sub. c by the transferee trustee was perfected prior to the establishment of the right of avoidance set up in the transferor trustee by Section 70, sub. e.

▪ To simplify the issue we assume that Dion's trustee has actual provable claims against Dee's estate. We turn next to the laws of Pennsylvania on which these claims are predicated. Examining that law, we find that the purported transfer was voidable rather than void. A subsequent transferee for value without notice of an outstanding equity or a defect in the title of the transferor, will take the transferred property free of any outstanding claim or equity.[5] Dee's trustee is in the position of such a transferee for the following reasons.

▪ The sequence of events, found by the Referee in Bankruptcy and not challenged by Dion's trustee, demonstrates that no action was brought on any claim of Dion's creditors in any court, Common Pleas or bankruptcy, until after Dee's petition for an arrangement had been filed. Dion's petition in bankruptcy was filed subsequently to Dee's petition. From this we must conclude that the status of Dee's trustee under Section 70, sub. c was *in esse* before any position was asserted by Dion's trustee under Section 70, sub. e. Dion's trustee's outstanding equities, if any, arising from the purported fraudulent transfer, were cut off.

▪ Dion's trustee also contends that reclamation will lie under the powers granted him by Section 70, sub. c. This contention cannot be supported because of the priority acquired by Dee's trustee. When conflicting claims of trustees in bankruptcy are each based on Section 70, sub. c and the claim of either trustee will cut off the claim of the other, the claim of the trustee of the estate in which the petition in bankruptcy was filed first must be deemed to have priority. Since Dee's petition, as we have said, was filed prior to Dion's petition, Dion's trustee must be held not to have a cause of action

5. Bulk Sales provision in the Uniform Commercial Code, 12A P.S. § 6–110; Fraudulent Conveyance Act, 39 P.S. § 359; Statute 13 Eliz. c. 5 (39 P.S.Appendix).

under Section 70, sub. c against Dee's trustee.

We can perceive no basis on which Dion's trustee can successfully assert a right to the property.

In view of the position that we have taken it is unnecessary to consider any other arguments advanced by the parties.

The judgment will be affirmed.