In re LAGUNA BEACH MOTORS, INC., Debtor.

GENERAL MOTORS ACCEPTANCE CORPORATION, Appellant,

v.

R. Neil RODGERS, Trustee, Appellee.

BAP No. CC–91–1053 VJO.

Bankruptcy No. SA 88–00357 JR.

Adv. No. SA 90–0013 JR.

United States Bankruptcy Appellate Panel, of the Ninth Circuit.

Argued and Submitted on Sept. 19, 1991.

Decided Sept. 15, 1992.

Robert D. Daniels, Los Angeles, Cal., for General Motors Acceptance Corp.

Sharilyn J. Hopson, Santa Ana, Cal., for R. Neil Rodgers, Trustee.

Before VOLINN, JONES and OLLASON, Bankruptcy Judges.

OPINION

VOLINN, Bankruptcy Judge:

OVERVIEW

Appellant, General Motors Acceptance Corporation (GMAC) held a perfected security interest, pursuant to the California Motor Vehicle Code, in a 1986 Corvette auto-

mobile owned by one Larry Hasty (Hasty). The latter, desiring to sell the vehicle, entered into an option/sales agreement with the debtor Laguna Beach Motors, Inc. (Laguna), a used car dealer. Hasty granted an option to Laguna for purchase of the vehicle for $22,000 which was to be paid when it found a buyer to whom it could make a sale. Laguna was given possession of the vehicle so that it could be displayed and test driven in order to effect such a sale. The option agreement provided that before Laguna could acquire title to the vehicle it was required to pay GMAC $19,000 to satisfy its lien and $3,000 to Hasty for his equity. Upon receipt of these funds, the title documents were to be endorsed by Hasty and GMAC as required by the California Motor Vehicle Code (CVC) § 5600 (cited below). Laguna eventually found a buyer, one Gary Sheridan, from whom it received cash and a used Mercedes Benz, in return purporting to transfer possession and title to Sheridan. Laguna effected this transfer without first satisfying the claims of GMAC and Hasty and without providing valid title to the transferee. When Hasty discovered the vehicle had been transferred, he confronted the principals of Laguna who then found the means to raise the funds with which to pay off Hasty and GMAC thereby acquiring the title documents necessary to effectuate a transfer of title to Sheridan in conformity with CVC § 5600.

The trustee claimed that GMAC received a preference under 11 U.S.C. § 547 and § 550 [1] having been the immediate transferee in a transaction whereby Hasty, an alleged creditor, received the benefit even though GMAC was not a creditor of the debtor, and notwithstanding that GMAC released its lien only upon a contemporaneous transfer to it of funds. The court below ruled in favor of the trustee. We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

The debtor, Laguna, was an automobile dealership. In early October 1987, Hasty entered into a written option agreement with the debtor for the purchase of Hasty's 1986 Chevrolet Corvette. Under the agreement, Laguna had up to thirty days within which to purchase the automobile for the sum of $22,000.00. It was understood that the lienholder on the vehicle, GMAC, would be paid its debt with the remainder to go to Hasty. The trial court found that Hasty intended that Laguna sell the car to a third party, and that he and GMAC would be paid before or at the time of the sale.

Laguna originally attempted to sell the car to an individual named Toan Ha, but this sale aborted. Thereafter, on October 15, 1987, Laguna found another buyer, Gary Sheridan, and intending to sell the vehicle in return for the trade-in of a "grey market" Mercedes plus $6,000 cash, transferred possession of the Corvette to Sheridan without giving notice to or making payment to GMAC and Hasty.

On discovering that the automobile was missing from Laguna's lot, Hasty made demand for payment. After several weeks, Laguna paid GMAC the sum of $19,091.04, and some $3,000 to Hasty in order to obtain release of the title so that the sale to Sheridan could be effected.

Laguna filed a Chapter 7 petition on January 20, 1988. R. Neil Rodgers, appellee herein was appointed trustee. The trustee commenced an adversary proceeding alleging preferential and fraudulent transfers as to both GMAC and Hasty. The bankruptcy court conducted a trial and thereafter issued a memorandum opinion. The trial court concluded that under California law, title to a vehicle does not pass without proper endorsement and delivery of the certificate of ownership and that debtor's actions in transferring the car to Sheridan constituted a conversion of the vehicle. The court concluded that Hasty became a creditor of the estate when Laguna converted the automobile, and that the debtor's payment to GMAC, which was made

---

1. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

within ninety days of the bankruptcy filing, was on account of its antecedent debt to Hasty. As to GMAC, the trial court held that because it received the funds from the debtor as an initial transferee, even though it never was a creditor of the debtor, it was nevertheless liable under Code § 550(a)[2] for repayment of $19,091.04.

GMAC filed a timely notice of appeal.

### ISSUES

1. Whether GMAC and Laguna engaged in a contemporaneous exchange for new value pursuant to Code § 547(c)(1)[3]; and

2. Whether GMAC was subject to a preference claim as an initial transferee under Code § 550(a) where there was no independent factual premise which would have warranted a claim against it as a preferential transferee.

### STANDARD OF REVIEW

■ The issues appealed involve findings of fact and conclusions of law. Factual findings may be overturned only if clearly erroneous and legal conclusions, which are predominant here, are reviewed under a *de novo* standard. *Ragsdale v. Haller*, 780 F.2d 794, 795 (9th Cir.1986).

### DISCUSSION

On appeal, GMAC does not contest most of the trial court's findings and conclusions. GMAC contends only that it has a valid defense under § 547(c)(1), and that it cannot be deemed the initial transferee under § 550(a) from whom recovery of the alleged Hasty preference may be obtained.

The trial court analyzed the facts as involving two potential preference transactions: first, the Hasty/debtor transaction in which the debtor made the GMAC payment thereby satisfying Hasty's debt to GMAC. That debt continued after Laguna's conversion of the car and transfer of ownership to Sheridan. While Hasty's debt was paid as a result of the payment to GMAC, nevertheless, GMAC was the initial transferee of the funds, thereby involving section 550.

It is our view that the events in question constituted elements of a single transaction, that is, sale of a vehicle subject to a lien. Insofar as Hasty was concerned, the sale was not to occur until he had in his hands the money which would pay off GMAC and provide him with something for his equity. This pay off was a condition precedent to a full transfer of title free and clear of the GMAC lien. As to GMAC, it took no part in the transaction. It had perfected its security interest in the vehicle as required by CVC § 6301 and pursuant thereto had possession of the title certificate to the vehicle.

■ Under Code § 547(c)(1), a preference cannot be avoided if there is a contemporaneous exchange for new value. This section provides as follows:

(c) the Trustee may not avoid under this section a transfer—

(1) to the extent such transfer was

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contempo-

---

2. Section 550(a) states:

(a) Except as otherwise provided in this section, *to the extent that a transfer is avoided* under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
  (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
  (2) any immediate or mediate transferee of such initial transferee.

3. Section 547(c)(1) states:

(c) The trustee may not avoid under this section a transfer—
  (1) to the extent that such transfer was—
  (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
  (B) in fact a substantially contemporaneous exchange.

raneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange;

This exception was intended to shield from preference avoidance those transfers "which are essentially simultaneous."

GMAC asserts that it is insulated by this defense because it gave up its lien and transferred the certificate of title in Hasty's automobile contemporaneously with and by reason of its receipt of the sum of $19,091. On the other hand, the trustee argues that GMAC incorrectly focuses on the debtor/GMAC transaction, one that was held not to be a preference, rather than on an alleged preferential debtor/Hasty transaction.[4]

The transaction involving Hasty, GMAC and Laguna basically encompasses three issues: (1) whether there is an intention for a contemporaneous exchange; (2) whether the exchange was in fact substantially contemporaneous; and (3) whether there was new value, as opposed to an antecedent debt.

2. Was There an Intention to Have a Contemporaneous Exchange?

The Ninth Circuit has held that "[t]he critical inquiry in determining whether there has been a contemporaneous exchange for new value is whether the parties intended such an exchange." *In re Wadsworth Bldg. Components, Inc.*, 711 F.2d 122, 124 (9th Cir.1983).

California Vehicle Code (CVC) § 5600 provided as follows:

No transfer of the title or any interest in or to a vehicle registered under this code shall pass, and any attempted transfer shall not be effective, until the parties thereto have fulfilled either of the following requirements:

(a) The transferor has made proper endorsement and delivery of the certificate of ownership ... to the transferee as provided in this code and the transferee has delivered to the department or has placed the certificate ... in the United States mail addressed to the department....

(b) The transferor has delivered to the department or has placed in the United States mail addressed to the department the appropriate documents for the registration ... of the vehicle pursuant to the sale or transfer...." Cal.Veh.Code § 5600 (West 1987).

CVC Section 5600 mandates that no transfer of title to a vehicle is effective unless there has been a proper endorsement and delivery of the Certificate of Ownership. Laguna's compliance with the statute relative to the delivery of documents by GMAC was contemporaneous with receipt of the cash. There was new value with respect to GMAC and there is no evidence of any basis for an estoppel contention as to GMAC relating to the transfer or grant of possession of the vehicle to Laguna. When Laguna transferred possession of the vehicle to Sheridan, because it did not have title to the vehicle, it could not affect the GMAC debt nor the lien securing it. The "exchange" effectively occurred when Laguna made the GMAC payment and in return received certificate of title.

The viability of GMAC's security interest in the case of a wrongful transfer to an innocent third party is supported by California case law. *See Louis & Diederich, Inc. v. Cambridge European Imports, Inc.*, 189 Cal.App.3d 1574, 1586, 234 Cal. Rptr. 889, 896 (1987), where the court, albeit in dicta, stated:

A security interest survives a sale of the collateral, unless the secured party consented to the sale. (Com.Code § 9306.)

---

4. Laguna also contends that GMAC has no standing under the Code to assert the § 547(c)(1) defense because Hasty, not GMAC, is the preferential creditor. This argument is belied by the statutory language which contains no limitation on who can raise the defense. Indeed, recovery against GMAC, as the "initial transferee," is limited under Code § 550(a) which allows such recovery only "to the extent that a transfer is avoided under section ... 547...." Thus, if a valid § 547(c)(1) defense to avoidability exists, there can be no recovery from GMAC under § 550(a).

To be effective against a purchaser, however, the security interest must have been "perfected" prior to the purchase. Perfection is accomplished by filing a financial statement with the Secretary of State, or by possession of the collateral, neither of which occurred here. (Com. Code § 9302.)

As indicated, GMAC had prior to the sale, perfected its security interest.

2. Whether the Trustee May Recover the Alleged Hasty Preference from GMAC Under Section 550

■ Assuming *arguendo* that Hasty received a preference by virtue of the GMAC payment, is GMAC liable simply because it is an initial transferee?

Code § 550 identifies those entities or individuals from whom avoidable transfers may be recovered. This section provides in relevant part:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, ... the trustee may recover, for the benefit of the estate, the property transferred, or ... the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made;

GMAC contends that an initial transferee is liable for repayment under this statute only where the transfer is a preference as to that transferee. Because the bankruptcy court found no preference as to GMAC, appellant argues the trustee is precluded from recovering any funds from GMAC.

The Code's legislative history states in relevant part:

Section 550 prescribes the liability of a transferee of an avoided transfer and enunciates the separation between the concepts of avoiding a transfer and recovering from the transferee.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 375, 376 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6331, 6332.

The trustee contends that once there has been a determination that there is a preference, thereafter because of the separation of concepts as to avoidance of a transfer and recovery from a transferee, there may be a recovery against a transferee from whom a preference might not be recovered in the first instance. The trustee relies on a number of cases involving a debtor, a creditor and a guarantor, usually an insider, so that the trustee may have the benefit of the longer recovery period of one year with respect to the transfer. This theory is embodied in the case of *Levit v. Ingersoll Rand Financial Corp.*, 874 F.2d 1186 (7th Cir.1989). Levit was the trustee of V.N. Deprizio Construction Co. and the case has resulted in the so called *Deprizio* doctrine which held that the preference-recovery period from an outside creditor, usually a bank, is one year when payment produces benefit for an inside creditor, usually a guarantor. Courts fall on either side of this issue which has excited extensive comment, not infrequently of an abstruse character.[5]

Here we have no relationship involving an inside creditor who has guaranteed a debt to a third party. GMAC was not involved at all in the transactions relating to sale of the vehicle. It had nothing to do with Laguna having possession of the vehicle and indeed possession was immaterial to its security interest. It would be inequitable to hold that GMAC, relying on its rights under the California Motor Vehicle Code, and an utter stranger to the debtor, is in the same position as a preferential transferee by virtue of section 550. As stated in 4 *Collier on Bankruptcy*, § 550.02 at 550–12:

In some circumstances, a literal application of section 550(a) would permit the trustee to recover from a party who is

**5.** Henk J. Brands, *The Interplay Between Sections 547(b) and 550 of the Bankruptcy Code.* 89 Colum.L.Rev. 530 (1989).

Marc L. Hamroff and Robert S. Cohen, *One Year Preference Recoveries Can Extend to Lenders and Other Non–Insider Creditors.* 96 Com. L.J. 153 (1991).

Brad R. Godshall, Gregory M. Pettigrew, Thomas Musselman, and Bradley Brooke, *Two Years Later: Eight Questions Left Unanswered (or Extremely Confused) by Deprizio.* 19 Cal.Bankr.J. 41 (1991).

innocent of wrongdoing and deserves protection. In such circumstances the bankruptcy court should use its equitable powers to prevent an inequitable result.

This is a case where, under state law, GMAC's lien was unassailable. There are no facts indicating that it had done anything to compromise its paramount position. Assuming *arguendo* that there is some theoretical basis for consideration of section 550, it would be well to also consider the caveat of *Lewis v. Manufacturers Nat. Bank*, 364 U.S. 603, 608, 609, 81 S.Ct. 347, 350, 5 L.Ed.2d 323 (1961):

> The construction of § 70c which petitioner urges would give the trustee power to set aside transactions which no creditor could void and which injured no creditor. That construction would enrich unsecured creditors at the expense of secured creditors, creating a windfall merely by reason of the happenstance of bankruptcy.
>
> . . . .
>
> That is too great a wrench for us to give the bankruptcy system, absent a plain indication from Congress which is lacking here.

We conclude that the ruling of the court below should be and is reversed.